Commonwealth *v.* Cooley & others.

COMMONWEALTH *vs.* BENJAMIN COOLEY & others.

On a trial for an assault on an officer while serving a criminal process on the defendant, a witness for the defendant, who has testified that at the time of the arrest he was within two or three feet of the defendant, and has described the relative position and occupation of the persons present, cannot be asked whether he would have been likely to have heard what was said, if any thing, by the officer to that defendant.

It is no ground of exception, that a witness, who had already testified in chief that he did not hear what was said by certain persons on a particular occasion, was not allowed to be asked, by the party calling him, whether one of those persons did not say such and such words on that occasion, and whether another of them did not speak to a third person.

An officer, making an arrest by virtue of a warrant, is not bound to exhibit his warrant and read it to the prisoner before securing him, if he resists.

On a trial for an assault on an officer while serving a criminal process on the defendant the evidence for the Commonwealth tended to show that the defendant violently resisted being arrested, and attempted to escape, and was encouraged by a surrounding crowd, and aided by other persons, some of whom struck the officer; and the evidence for the defendant tended to show that he submitted quietly to the arrest, and made no attempt to escape, but that, being treated with great violence and cruelty by the officer, a struggle arose between them, during the continuance of which there was much noise and confusion. The court refused to instruct the jury that if the officer neglected or refused to read his warrant, or state the grounds for the arrest, the defendant would be justified in making any effort or resistance necessary to free himself; and instructed them that if the officer arrested the defendant, not stating why he did it, and, when asked by the defendant, refused to say, the defendant might use all the resistance necessary to free himself; but that if the officer, when making the arrest, or upon a subsequent question of the defendant, told him that he had a warrant against him, the arrest would be legal, though the officer declined to read the warrant. *Held,* that the defendant had no ground of exception.

On the trial of several persons for an assault upon an officer while serving a criminal process on one of them, an instruction to the jury that any act of that defendant, after he was arrested, which amounted to a resistance or obstruction of the officer, would render him liable, and that any person present, aiding, abetting or approving that resistance, by words, acts or signs, would be equally liable, affords no ground of exception, if that defendant only is found guilty of an assault on an officer in the discharge of his duty, and the others of a simple assault.

Persons interfering with an arrest by an officer under criminal process, not knowing that he is an officer and acting in the discharge of his duty, but interfering with the intention of quelling a fight, if they use more force than is necessary for that purpose, are liable to an indictment for an assault.

INDICTMENT against Benjamin Cooley, Aaron M. Cooley and Gershom W. Harrison, for an assault and battery on Charles W. Rice, an assistant marshal of the city of Springfield, while in the discharge of the duties of that office; and for a common assault on Rice.

At the trial in the court of common pleas, before *Briggs,* J., the district attorney offered evidence tending to prove " that, as Rice, with three men with him, approached B. Cooley, who was standing on the side walk, one of the three spoke to Cooley, calling him by name, and Rice then put his hand on Cooley, and said he had a warrant against him; that Cooley instantly sprang to get away, Rice holding on him until they fell in the gutter, the other three assisting Rice; that after a struggle, and an attempt to put handcuffs on Cooley (which proved too small), on Cooley promising to go along with them, they let him; when he immediately renewed his efforts to escape, and so continued his efforts until they reached a post at the side of the street, when he closed both hands around it; that during this time he was told by one of the four that he was arrested on a warrant; that he did not demand, and Rice did not refuse to show the warrant; that during this time there were frequent cries by the crowd which were pressing around them, amounting to fifty people, to Cooley, not to be arrested alive; that during this time A. M. Cooley came up and struck Rice violently in the breast or side with both his fists; that Harrison came up to Rice, and seized Rice violently by the collar, and was told by Rice that he had arrested B. Cooley on a warrant, and ordered to let go of him, which he refused, until the crowd rushed against them, when he seized hold of one of Rice's assistants."

One Fletcher, a witness called by the defendants, testified that at the time of the arrest, (which was on a Saturday evening,) " he was in front of the store, and Cooley stood there ; he was not more than two or three feet from Cooley, and was busy talking to another person ; that he did not see the officers when they approached ; the first he saw, Cooley was being carried away ; they had come behind ; three or four took him, and threw him down in the gutter ; got a glimpse as he was going ; could not describe how they did it ; did not hear any thing said."

The defendants' counsel asked the witness " if he would have been likely to hear, if any thing had been said by the officers to Benjamin ? " The court ruled this to be an improper question, and said " that the witness having described his position, and that of the defendant B. Cooley, when Rice and the other officers came up, the distance Cooley was from him, and what the witness was doing at the time, and that he did not hear any thing said, it was for the jury to say whether or not he would have been likely to, if any thing had been said by the officers."

The defendants' counsel asked the witness, " Did Rice go up to B. Cooley, put his hand on his shoulder, and say, ' I have a warrant,' as he has testified ? " " Did Holcomb go up to B. Cooley, and speak to him ? " Each of these questions was objected to, and the objection sustained by the court.

The defendants offered evidence tending to prove " that Rice and the men with him came up and seized hold of B. Cooley, without speaking to him, dragged him across the side walk, and threw him into the ditch, threw him on his face, and treated him with great violence and cruelty ; that he made no struggle to get away or resist, except to regain his feet ; that he frequently called on them to know what they wanted of him, and when told that they had a warrant, he called on them to read it ; and that they refused to read it, one or more of them saying that he was not obliged to read it in the night ; that they dragged him along to the post beside the walk, when he seized it, and said he wanted to adjust his clothes, which had been torn and damaged in the struggle ; and that, when another officer came up, he expressed a willingness to go, and did go with him and Rice to the

jail; that during the struggle, and when Rice and those with him were called on to let B. Cooley up, Rice said he had arrested him the night before, and he had escaped from him, and he should not do it again; that, during the struggle between Rice and his three assistants and B. Cooley, Harrison came up and inquired what the matter was, and being told there was a fight, went up to them, and said he would have no fighting there, and put his hands on Rice; that, on being told that Cooley had been arrested on a warrant, he desisted, and told Cooley to go along peaceably, and did nothing further; that A. M. Cooley, on being told there was a fight, attempted to go into the crowd where B. Cooley, his relative, was, and was violently pushed back by Rice, and no one of the defendant's witnesses saw him strike Rice; that there was much confusion and noise during the whole contest, which lasted about fifteen minutes."

The defendants' counsel requested the court to instruct the jury, " that, so long as Rice neglected or refused to read the warrant, or state the grounds for the arrest, the defendant B. Cooley would be justified in making any effort or resistance to disengage himself from the officer." But the court declined so to instruct the jury.

The defendants' counsel further requested the court to instruct the jury, " that, so long as the said officer so neglected and refused to read the warrant, or state the grounds for the arrest, the defendant Benjamin Cooley would be excused and justified in making any effort and struggle necessary to free himself from the grasp of any one detaining him." The court declined so to instruct the jury.

But the court instructed the jury, " that, if Rice and the three men with him came up to B. Cooley and seized him, not stating why they did it, and he asked what they took him for, and Rice refused to say, he might use all the resistance necessary to disengage himself from them; that if, when Rice arrested him, he told him he had a warrant against him, or if, after the arrest, Cooley asked why he arrested him, and what he wanted, and Rice told him he had a warrant against him, the arrest would be legal, though Rice declined reading the warrant to him ; that

30 *

if, from the conduct of Cooley, or from the darkness, Rice could not read the warrant, he was not bound to do so."

The court also instructed the jury, " that any act on the part of Cooley, after he was told he was arrested on a warrant, which amounted to a resistance or obstruction of the officer, would render him liable; and any person present, aiding, abetting or approving that resistance, by words, acts or signs, would be equally liable; that, to render B. Cooley or any one of the defendants guilty on the first count, the government must prove beyond a reasonable doubt that they resisted Rice, knowing that he was an officer, and that he was acting in discharge of his duty as such officer; that if Harrison and A. M. Cooley interfered, not knowing that Rice was an officer and acting in discharge of his duty, but interposed for the purpose of arresting or quelling a fight or breach of the peace, they would not be liable for so doing, unless they used more force or violence than would have been necessary for that purpose; and if they did interpose for the purpose of arresting a fight, and used more force than was necessary for that purpose, they would be liable on the second count."

The jury found B. Cooley guilty on the first count, and not guilty on the second count; and Harrison and A. M. Cooley not guilty on the first count, and guilty on the second count. The defendants alleged exceptions.

*E. W. Bond*, for the defendants.

*J. H. Clifford*, (Attorney General,) for the Commonwealth.

MERRICK, J. Exception is taken in this case to the rejection of evidence offered by the defendants, and to the instructions which were given to the jury by the presiding judge.

1. There was no error in the exclusion of the answer to the inquiry put to Fletcher, "if he would have been likely to have heard, if any thing had been said by the officers to Benjamin?" The reasons given by the court were fully sufficient to justify the refusal to allow any reply to be put in evidence. The witness had already explained the relative position of the parties; had stated as fully as he could who were present, and how he, as well as the others, were severally engaged. Whether

he would have been likely to have heard what was said, if any thing was said by the officer to Cooley, was mere matter of opinion, concerning which we do not perceive that he had the means of determining with any greater degree of accuracy than the jury, to whom all the attending circumstances, as well as the relative situation of the parties, had been fully made known.

We are aware that it has not unfrequently occurred that questions similar to this have been proposed and answered in the course of the trial of issues of fact. But so far as is known, whenever such interrogations have been allowed, no objection was interposed to the inquiry. This forbearance has probably resulted from the belief that they were too unimportant to be made the subject of controversy. If however the true rule is insisted upon, the witness under examination must be limited to the statement of facts only, except in particular cases, where, having peculiar means of deducing conclusions, the rules of evidence allow him to express his opinion upon facts which are proved, or upon an assumed hypothesis which the inquirer supposes has been or will be satisfactorily established.

2. To the question, " Did Rice go up to B. Cooley, put his hand on his shoulder, and say, ' I have a warrant,' as he has testified ? " it may have been a sufficient objection, that it was in its form so direct and leading as to make it on that account inadmissible.

But in support of the ruling which disallowed this, as well as the further inquiry, " Did Holcomb go up to B. Cooley, and speak to him ? " there is the further consideration, quite decisive in its character, that the witness had in effect already given negative answers to the questions. He had testified distinctly, before these interrogatories were put to him, that he did not hear any thing said by any one at the point of time indicated by the inquiry. And if he had heard nothing said by any one, it was impossible that he could testify to the utterance of a given expression by a particular individual. The inquiry obviously could lead to the disclosure of no fact, nor come to any useful result. The presiding judge might therefore very

properly, in the exercise of judicial discretion, restrain the de-
fendant from pursuing the cross-examination further in this
direction.

We may add also that, in view of the facts stated in the bill
of exceptions, we are unable to perceive how the answers of the
witnesses, even if they had been in the affirmative, could have
had any material or appreciable effect upon the course of the
trial, or the issue to be determined. And if the answers, in the
most favorable way to the defendant in which they could have
been given, would have been of no value to him, the refusal
of the court to allow an inquiry to be made concerning a
matter so immaterial affords no ground for setting aside the
verdict.

3. The questions arising upon the refusal of the court to accede
to the request of the defendants, and upon the instructions
which were actually given to the jury, though they do not
appear to involve any serious difficulty in their solution, are
worthy of more consideration. Whenever an officer, by virtue
of a warrant directed to him and placed in his hands for ser-
vice, arrests the party against whom it has been issued by a
court of competent jurisdiction, the law imposes duties upon
each of the parties which they are respectively bound to observe.
The officer is to explain the cause for which he makes the ar-
rest; to state the nature and substance of the process which
gives him the authority which he professes to exercise; and, if
it is demanded of him, to produce and exhibit it to his prisoner
for his perusal, that he may have no excuse for resistance.
1 Chit. Crim. Law, 51. On the other hand, the accused is re-
quired to submit to the arrest, to yield himself immediately
and peaceably into the custody of the officer, who can have
no opportunity, until he has brought his prisoner into safe
custody, to make him acquainted with the cause of his arrest,
and the nature, substance and contents of the warrant under
which it is made. 1 Russell on Crimes, (7th Amer. ed.) 520
*&. seq.* These are obviously successive steps. They cannot
all occur at the same instant of time. The explanation must
follow the arrest; and the exhibition and perusal of the warrant

must come after the authority of the officer has been acknowl-edged, and his power over his prisoner acquiesced in.

And a majority of this court are of opinion, that at the trial of this cause in the common pleas none of the directions in matters of law which are now complained of were at variance with the principles above stated, or in any way erroneous, when considered in their connection with the matters of fact in relation to which they were given. If treated merely as abstract propositions, perhaps some part, both of the rulings, and of the refusals of the presiding judge to rule, may seem to have been fairly obnoxious to objection. But neither the one nor the other are to be regarded as if they were formal statements of a broad and unqualified proposition or principle of law. They were plainly not so intended, and could not have been so under-stood. The correctness of particular rulings is always to be ascertained and determined by taking into consideration for what purpose and under what circumstances, in what connec-tion and with what qualifications, they were made. In this case, the instructions desired by the defendants, which were with-held, and also those which were submitted to the jury, are so to be examined and interpreted. The general terms in which each is expressed are to be taken as qualified by the facts in reference to which they were respectively called for and applied.

It appears from the bill of exceptions, that the evidence in the case was conflicting and contradictory in relation to what oc-curred at and immediately after the time when the defendant B. Cooley was arrested. That which was produced in his behalf tended to show that he submitted quietly, without opposition or objection, to the arrest, and made no effort to escape; but that, being treated with harshness and unjustifiable severity by the offi-cer, a contest arose between them, during the continuance of which there was much noise and confusion. On the other hand, the government attempted to prove that, when arrested, Cooley manifested no disposition to submit, or to yield obedience to the officer; but instantly attempted to effect his escape; that, from a crowd of fifty people near by, there came to him repeated cries never to be taken alive; that a violent resistance on his

part, aided by persons acting in coöperation with him, imme-diately ensued, during the continuance of which a severe blow was struck upon the breast of the officer by another of the defendants.

It was in reference to the evidence developing these various occurrences, that the court, after first informing the jury in very express terms that if Cooley, when seized, was not told that he was arrested, or if the officer refused, when requested, to inform him why he was taken, he might lawfully use all the resistance necessary to disengage himself, declined to give the further instructions asked for by the defendants. And the refusal, under such circumstances, and considered in that connection, was right; for, in substance and effect, it amounted to no more than this, that Cooley could not, by his own impetuous and violent conduct, first deprive the officer of any reasonable and sufficient opportunity to read his warrant or state the cause of making the arrest, and then avail himself of the omission of the officer to do so, as a justification of his own resistance and efforts to escape.

Whether the particular instruction, that any person present aiding, abetting or approving, by words, acts or signs the resistance of B. Cooley, would be equally liable with him, was correct, is now wholly immaterial, since no one has been convicted of any such offence; and therefore there is no injured party to complain of its possible inaccuracy.

The rule prescribed in reference to the liability of Aaron M. Cooley and Harrison was sufficiently favorable to them, and perhaps somewhat more so than could be fully sustained. But, at any rate, they have no cause of complaint that they were held to a too stringent responsibility. It is found by the jury, that they made an assault upon Rice, which they could not justify; but, under the instructions of the court, they were relieved from the more serious and aggravated part of the charge made against them, of having committed it upon an officer in the legal discharge of his duty.  *Exceptions overruled.*